**SIGNED THIS: February 2, 2024**

*/s/ Peter W. Henderson*

**Peter W. Henderson
United States Chief Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | |
| RACHEL J. HODEL, | Case No. 23-80182 |
| Debtor. | |
| ANDREW S. ERICKSON, | |
| Plaintiff, | |
| vs. | Adv. No. 23-8008 |
| THOMAS A. McCAW, | |
| Defendant. | |

## OPINION

When a person files for Chapter 7 bankruptcy, a trustee is appointed to investigate that person's financial circumstances, determine what assets may be distributed to creditors, and distribute those assets in a way that treats similar creditors fairly. The debtor's assets are generally assessed as of the date the petition is filed. But if that timing rule were absolute, there would be a problem: Debtors could transfer away all their assets before filing bankruptcy in ways that would be unfair to their creditors.

So bankruptcy law permits the trustee to investigate a debtor's finances from before the petition is filed and "avoid," or cancel, any unfair transactions to recover money for the creditors. Pre-filing payments that do not benefit the debtor are called "fraudulent conveyances," and pre-filing payments that unfairly give an advantage to certain creditors are called "preferences."

The Debtor here, Rachel Hodel, used money she obtained from her tax refund to pay the real property tax bills of her long-time partner, Thomas McCaw, about two weeks before she filed for bankruptcy. The Trustee alleges that the payment was unfair to Ms. Hodel's creditors. He asks that Mr. McCaw be ordered to pay back the money for distribution to those creditors. A trial was held on the matter. Based on the admissible evidence before it, the Court finds that the payment is avoidable in part.

# I

The Court has jurisdiction. The Trustee brought this adversary proceeding seeking to avoid Ms. Hodel's transfer as either a fraudulent conveyance, 11 U.S.C. §548(a)(1)(B), or a preference, *id*. §547(b). The district court has original but not exclusive jurisdiction of all civil proceedings arising under title 11, like this one. 28 U.S.C. §1334(b). The district court has referred all such cases to this Court. Bankr. C.D. Ill. R. 4.1; see 28 U.S.C. §157(a). The Court has statutory authority to hear "all core proceedings arising under title 11" including proceedings to avoid preferences and fraudulent conveyances. 28 U.S.C. §157(b)(2)(F), (H). The Court has constitutional authority to hear this case because it stems from the bankruptcy itself. *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

# II

## A

Ms. Hodel filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code on March 16, 2023. She was represented by an attorney. In July 2023, the Trustee filed a filed a two-count complaint commencing this adversary proceeding against Mr. McCaw. Count I alleges a fraudulent conveyance, and Count II alleges a preference.

Mr. McCaw in his answer and pre-trial statement claimed that Ms. Hodel's tax refund was exempt property beyond the reach of the Trustee. That argument conflicts with many cases holding that, once received, tax refunds are not exempt from collection under Illinois law. *In re Frueh*, 518 B.R. 881 (Bankr. N.D. Ill. 2014); *In re Austin*, 2014 WL 3695370 (Bankr. C.D. Ill. 2014) (Gorman, J.); *In re Russell*, 2013 WL 4591985 (Bankr. C.D. Ill. 2013) (Perkins, J.). It also conflicts with this Court's June 5, 2023 ruling denying Ms. Hodel an exemption in her bankruptcy case. After the Court explained at the pre-trial hearing in October 2023 that the cases did not support his argument, Mr. McCaw did not pursue a theory of exemption at trial. So there is no need to further discuss or rule upon whether the tax refund was exempt (or indeed if that is even relevant, see *In re Wierzbicki*, 830 F.3d 683, 688 (7th Cir. 2016)).

At that same pre-trial hearing, Mr. McCaw confirmed that he did not intend to retain counsel, opting instead to represent himself and asking for an expeditious trial. In his answer and pre-trial statement, he previewed a possible defense to Count I of the complaint: Ms. Hodel's payment was part of a larger financial arrangement between the two in which they both shared housing expenses and benefited from income from Mr. McCaw's properties. For example, he submitted a list of "2022 Expenses" describing household expenses that presumably the couple shared responsibility for. Doc. #21 at 15. The Court set the matter for trial expecting the controversy to center on whether Ms. Hodel had received reasonably equivalent value for her payment of Mr. McCaw's property taxes, notwithstanding her lack of ownership in those properties, due to the couple's overall financial situation.

### B

Only two witnesses—Ms. Hodel and Mr. McCaw—testified at trial. The Court, aware that Mr. McCaw was not represented by an attorney, attempted to give him wide latitude to offer any facts he felt were relevant into evidence. At the same time, the Court was keenly aware that it could not serve as Mr. McCaw's lawyer or advise him as to the best way to defend his case.

The evidence was essentially uncontested and almost entirely adduced by the Trustee. Ms. Hodel and Mr. McCaw live together at 309 Margaret Drive in Creve Coeur. They have lived together for twenty years and have two children together but are not married. He owns eight properties: the home their family lives in, and rental properties that generate income. Mr. McCaw described himself as a landlord, and there is no

3

evidence he earns income from any source other than the properties. Ms. Hodel, who earns money as a school bus driver, does not have any ownership interest in any of Mr. McCaw's properties, including the home. In early 2023, Ms. Hodel received $10,554 from her 2022 tax refund, which in part reflected earned income credits for her two children. She used that refund to pay $9,226.38 to the Tazewell County Treasurer for past due real estate taxes on Mr. McCaw's properties. The payment was made on March 2, 2023. When Ms. Hodel her bankruptcy petition two weeks later, on March 16, she reported assets of approximately $16,000 (including the $10,554 tax refund, even though she had already applied most of that towards the property taxes) and liabilities of approximately $57,000.

Ms. Hodel testified that she paid off the tax debts because she wanted to keep "a roof over [their] heads" and that Mr. McCaw took "care of [her and her children] all year." If Ms. Hodel didn't pay the taxes, she testified, she and the children "wouldn't have a house to live in." Ms. Hodel testified that Mr. McCaw generally takes care of all the household bills, the utilities, the insurance, the car payments, the children's clothes, shoes, and activities and "pretty much everything." Ms. Hodel's paycheck as a bus driver went towards paying off her credit card debt, which was incurred for mutual expenses for both Ms. Hodel and Mr. McCaw. Both witnesses testified Ms. Hodel did not owe Mr. McCaw money. Ms. Hodel testified that their financial situation was placed in peril during the COVID pandemic because Mr. McCaw's rental properties were not generating income.

Ms. Hodel did not know how much of the tax payment she made went towards the home as opposed to the rental properties. The Court takes judicial notice, Fed. R. Evid. 201(b)(2), (c)(1), that the Tazewell County Property Tax Inquiry, tazewellil.devnetwedge.com, states that on March 2, 2023, Thomas McCaw redeemed the 2021 property taxes for 309 Margaret Drive in Creve Coeur that had been sold at a tax sale the year before. See *In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 483 (Bankr. S.D. Ohio 2011) (holding court may take judicial notice of records contained on website maintained by county authority regarding real estate taxes)[1]. The sales price was $1,717.13, including fees. The Court thus finds, consistent with Ms. Hodel's testimony that she paid the taxes to keep her home, that $1,717.13 of the $9,226.38 payment to

---

[1] If either party wishes to be heard on the propriety of the Court's taking judicial notice or the nature of the fact noticed, it must file an appropriate pleading within 14 days of this opinion. See Fed. R. Evid. 201(e); Fed. R. Bankr. P. 7052.

4

Tazewell County on March 2, 2023, was applied to redeem taxes on Mr. McCaw and Ms. Hodel's home at 309 Margaret Drive.

No evidence was introduced on the other properties, though. Though the Court offered several opportunities for him to do so, Mr. McCaw did not introduce any specific evidence as to the financial arrangement between him and Ms. Hodel, including any documentary evidence concerning the couple's finances. The only concrete financial information in the record was provided by the Trustee, who introduced Ms. Hodel's bankruptcy schedules into evidence. The schedules, which were attested to under penalty of perjury by Ms. Hodel on March 16, 2023, do not mention Mr. McCaw's contributions to the household. In Schedule I ("Your Income"), Ms. Hodel stated that she did not receive any regular contributions from Mr. McCaw. (Schedule I requires debtors to "[s]tate all other regular contributions to the expenses you list in Schedule J," including "contributions from an unmarried partner.") And in Schedule J ("Your Expenses"), Ms. Hodel attested that she was responsible for expenses for utilities, food and housekeeping supplies, personal care products and services, transportation, vehicle insurance, a car payment, pets, and tobacco. Ms. Hodel did not claim a home ownership expense. Neither the Trustee nor Mr. McCaw elicited testimony from Ms. Hodel about Schedules I and J.

The Court finds, based on Ms. Hodel's testimony, that it is more likely than not that she and Mr. McCaw do not maintain separate financial lives; instead, as in many families, both partners contribute to the expenses of the household. However, there is insufficient evidence to make any more specific findings. The Court knows nothing about Mr. McCaw's finances, including his income or how much he contributes to the household. The evidence on the latter was incomplete, if not contradictory: Ms. Hodel testified at trial that Mr. McCaw took care of the family financially, but she swore in her schedules that Mr. McCaw did not contribute to any of the expenses she had to take care of, which included essentially all household expenses except for home ownership costs. The Court knows nothing about the seven rental properties, apart from the fact that there are seven of them. The Court does not know who usually pays the property taxes. The Court does not know if there is a mortgage on the house, or who pays it. And so forth. The Court finds only that Ms. Hodel and Mr. McCaw live together as a family with two children, and they share responsibility for household expenses.

## III

The Trustee argues that the March 2 payment was an avoidable fraudulent conveyance. He concedes that the payment was not a preference. The Court agrees, for the most part, on both counts.

### A

Count I alleges a fraudulent conveyance under 11 U.S.C. §548(a)(1)(B), in that Ms. Hodel transferred $9,229.38[2] in cash to Mr. McCaw[3] and did not receive reasonably equivalent value in exchange for that transfer. The Trustee did not allege that Ms. Hodel acted with intent to defraud under §548(a)(1)(A), and the Court agrees that there is no evidence that Ms. Hodel sought to defraud her creditors.

A fraudulent conveyance, otherwise known as "constructive" fraud, does not require any bad intent, though. *Matter of FBN Food Servs., Inc.*, 82 F.3d 1387, 1394 (7th Cir. 1996). The key point is whether the transfer was objectively unfair to a debtor's creditors, whether the debtor realized it or not. To establish a fraudulent conveyance, the trustee must prove (1) that there was a transfer of the debtor's property (2) which occurred within two years of the debtor filing for bankruptcy (3) for which the debtor received less than a reasonably equivalent value in exchange and (4) that the debtor was insolvent at the time of the transfer. *Chatz v. Stepaniants*, 546 B.R. 786, 792–93 (Bankr. N.D. Ill. 2016). If the Trustee proves those elements, he may recover the value of the property from either the initial transferee or the entity for whose benefit such transfer was made. 11 U.S.C. §550(a)(1).

At first glance, the Trustee appears to have proven a straightforward fraudulent conveyance:

*First*, it is undisputed that Ms. Hodel transferred $9,226.38 that belonged to her when she paid Tazewell County out of the proceeds of her tax return. Ms. Hodel testified as such and her testimony was corroborated by her tax return and a money order in the amount of $9,226.38 to the Tazewell County Treasurer.

---

[2] The evidence established that the transfer was for $9,226.38, with a $3 fee assessed.
[3] The evidence established that Tazewell County was the transferee, not Mr. McCaw.

6

*Second*, it is undisputed that the transfer occurred on March 2, 2023, within two years of Ms. Hodel's bankruptcy petition, which was filed on March 16, 2023.

*Third*, a cursory review suggests that Ms. Hodel did not receive reasonably equivalent value in exchange for her transfer (a subject discussed in further detail below). Ms. Hodel did not own any of the properties for which she paid Tazewell County. Her transfer of $9,226.38 was for the benefit of Mr. McCaw, and she did not receive anything in return for the transfer from Mr. McCaw at the time of the transfer.

*Fourth*, it is undisputed that Ms. Hodel was insolvent at the time of the transfer. On March 16, 2023, the sum of Ms. Hodel's debts was far greater than the fair value of her property, excluding property transferred and property exempted. See 11 U.S.C. §101(32)(A). A review of Ms. Hodel's schedules confirms that she did not become insolvent in the two weeks before she filed her petition.

## B

There is more to the story, though. Mr. McCaw and Ms. Hodel jointly maintain a household with children. Does their joint enterprise mean that Ms. Hodel received "reasonably equivalent value" for her payment to Tazewell County, even though she did not immediately receive anything in exchange for the payment?

"Value" is defined for our purposes to mean "property, or satisfaction or securing of a present or antecedent debt of the debtor," but it does not include "an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. §548(d)(2)(A). Ms. Hodel and Mr. McCaw agreed that she did not owe him a "present or antecedent debt," and "value" does not encompass promises to continue to furnish support to Ms. Hodel and her children. Intangible, non-economic benefits, such as preservation of marriage, do not constitute value. *Cohen v. Sikirica*, 487 B.R. 615, 625 (W.D. Pa. 2013). So we must look to whether Ms. Hodel received property, meaning economic value, in exchange for her transfer of $9,226.38 for Mr. McCaw's benefit.

You can imagine how a person in Ms. Hodel's situation might receive reasonably equivalent value for what looks like a fraudulent conveyance. Assume a couple live and care for their children together. Partner A, who is the main wage-earner, pays the car loan and insurance for Partner B's car, which is titled in Partner B's name. Partner A receives nothing of immediate value in return for her car payments—Partner B has

7

exclusive use and ownership of the car—and yet the weight of authority holds that such a payment for a household expense is for reasonably equivalent value. *United States v. Goforth*, 465 F.3d 730, 736 (6th Cir. 2006) (citing cases). What a family spends on routine household expenses is generally not subject to recovery by the trustee as a fraudulent conveyance, regardless of whether the debtor or the non-filing partner made the actual payment to a third party. *Richardson v. Reyes*, 2023 WL 8284798, at *5 (Bankr. C.D. Ill. Nov. 30, 2023) (Gorman, J.); *Morris v. Vansteinberg*, 2003 WL 23838125, at *6 (Bankr. D. Kan. Nov. 26, 2003).

Section 548(a)(1)(B) does not, after all, look to "exactly" equivalent value; it looks to "reasonably" equivalent value, which depends upon all the facts of each case. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997). "[I]n deciding whether value has been transferred the court must examine 'all aspects of the transactions and carefully measure the value of all benefits and burdens to the debtor, direct or indirect.'" *In re Richards & Conover Steel, Co.*, 267 B.R. 602, 612 (8th Cir. B.A.P. 2001). Courts presume that a domestic partner who pays regular household expenses on behalf of her long-term cohabiting partner receives reasonably equivalent value for her expenditures, because they are made in furtherance of their partnership, which entails direct and indirect economic benefits. One household is more affordable to maintain than two, and "what benefits one [partner] will benefit the other." *Id*. at 614 (noting when debtor and other person share identity of economic interests, debtor may receive value even though in form value passed only to other person). No "dollar-for-dollar" equivalence is required to establish reasonably equivalent value, *Barber*, 129 F.3d at 387, and that is especially so when it comes to shared household finances. See *Geltzer v. Xaverian High School*, 502 B.R. 124, 137 (Bankr. E.D.N.Y. 2013) (recognizing the "reality of the family is that, except in cases of great wealth, it is a single economic unit" when it comes to fraudulent conveyances.).

The caveat, of course, is that actually fraudulent transfers among domestic partners before bankruptcy, or unusual transfers from one spouse to another, or other transfers that evidence game-playing are not immune from the trustee's avoiding powers. See 11 U.S.C. §548(a)(1)(A); *In re Bargfrede*, 117 F.3d 1078, 1080 (8th Cir. 1997) (finding no value was received when husband paid wife's debt stemming from civil judgment). Determining reasonably equivalent value is a case-by-case inquiry that depends upon a number of factors. *In re Smith*, 811 F.3d 228, 240 (7th Cir. 2016). The Court notes only that regular payments for reasonable household expenses do not

8

ordinarily create the sort of unfairness to a cohabiting partner's creditors that the avoidable transfer provisions in the Bankruptcy Code remedy.

The Trustee believes it significant in this case that Mr. McCaw and Ms. Hodel are not married. The Court disagrees. Marriage might of course create a strong presumption of shared lives and household expenses. But a couple's *de facto* status is what matters. Just as an unmarried partner may be an insider, notwithstanding his lack of legal affinity to the debtor, see *Miller v. Sandell*, 613 B.R. 898, 904–05 (Bankr. E.D. Mich. 2020) (describing factors to determine non-statutory insider status), so too can he be identically situated to a spouse insofar as he is a household member who shares income and expenses with his partner. That is undoubtedly the case here; as the Trustee correctly pleaded, Mr. McCaw is an insider. He and Ms. Hodel have lived together for twenty years and have two children together. Transfers to third parties in furtherance of household expenses for the couple or their children are not fraudulent conveyances.

So was the March 2 payment in furtherance of household expenses? That is a close call, rendered more difficult by the lack of much probative evidence concerning the couple's finances. When a court is not presented with enough evidence to make essential factual findings, the party that bears the burden of producing those facts loses the case. So this case comes down to that question: who bears the burden of introducing the evidence that would permit the Court to assess whether Ms. Hodel received reasonably equivalent value for paying Mr. McCaw's property tax debts?

### C

The Trustee always bears the burden of proof (risk of non-persuasion) that less than reasonably equivalent value was received for a transfer. *First Nat'l Bank in Anoka v. Minnesota Utility Contracting, Inc.*, 110 B.R. 414, 418 (D. Minn. 1990); 5 Collier on Bankruptcy ¶548.11[2]; see also *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995). Establishing that no consideration was given for a transfer satisfies that burden, because the natural inference is that no value is received for a facially gratuitous transfer. *Reyes*, 2023 WL 8284798, at *3. The defendant in that situation thus bears a burden to produce evidence to explain the value the debtor received. *Id.*, at *4; *Stepaniants*, 546 B.R. at 793. "[O]nce a prima facie case appears, the laboring oar passes to [the debtor's] hands and he must bring the boat to shore. It is he who has caused the [transfer], who has access to the facts, and who alone knows what [the] explanation is." *Fed. Provision Co. v. Ershowsky*, 94 F.2d 574, 575 (2d Cir. 1938); see also *In re Richards & Conover Steel, Co.*, 267

9

B.R. at 614 ("The party claiming to have delivered value must quantify it."). Assuming the defendant supports his explanation of value with some evidence, the burden of persuasion remains with the trustee to demonstrate why that evidence fails to establish that the debtor received reasonably equivalent value.

As outlined above, the Trustee's evidence here leads to the inference that no reasonably equivalent value was received by Ms. Hodel at the time she transferred her money to Tazewell County to satisfy Mr. McCaw's debts. The burden was thus on Mr. McCaw to explain how Ms. Hodel received any value for her payment of his taxes on rental properties he uses in his business. He did not meet that burden. His properties, which he solely owns, were not sufficiently connected by evidence to Ms. Hodel's economic welfare. The Court has no way of actually knowing whether Ms. Hodel received value, let alone reasonably equivalent value, for paying thousands of dollars to support Mr. McCaw's business.

The evidence that was supplied at trial is consistent with many different scenarios. Imagine two, for illustration. In Scenario A, Mr. McCaw generates income from the rental properties and commits that income to household expenses throughout the year, and Ms. Hodel's tax refund provides the source for her annual contribution to retain those income-generating properties for the family (as her testimony suggested). Were that the case, the Court would likely find that she had received reasonably equivalent value for maintaining what would be essentially a joint source of income for the family. In Scenario B, though, Mr. McCaw's business does not generate income. Ms. Hodel continues to prop up the business, at the expense of her creditors, by transferring value to Mr. McCaw for his business debts and receiving little or nothing in return (as reported on Schedule I). In that case, the Court would find that no reasonably equivalent value was received for the transfers.

The Court can only guess whether Scenario A or B (or any other scenario) is more likely. Guesses cannot substitute for findings based on evidence. Because Mr. McCaw had the responsibility to produce evidence that would allow the Court to do more than just guess, and he failed to do so, the inference that no value was received for Ms. Hodel's transfer is unrebutted. The Trustee has therefore carried his burden of proof that it is more likely than not that Ms. Hodel's payment on those properties was a fraudulent conveyance that may be recovered for the benefit of her creditors.

On the other hand, Mr. McCaw did produce sufficient evidence to explain that part of the March 2 payment was for expenses relating to the couple's home at 309 Margaret Drive. Ms. Hodel credibly testified that she paid the tax bills to keep a roof over her head and to ensure she would have a house to live in. Housing no doubt has economic value. *Pereira v. Wells Fargo Bank, N.A.*, 342 B.R. 165, 172 (Bankr. S.D.N.Y. 2006). Ms. Hodel's testimony was sufficient to establish that she received that value as a result of redeeming the taxes, notwithstanding the fact that the home is titled in Mr. McCaw's name only. Ms. Hodel and her children continue to enjoy the use of the home, which would have been imperiled had she not paid money to redeem the taxes. Though Mr. McCaw did not himself establish the amount she paid to redeem the taxes on the home, that amount ($1,717.13) can be accurately and readily determined from a source—the Tazewell County Property Tax Inquiry—whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b)(2). So Mr. McCaw adequately explained how Ms. Hodel received value when paying the property taxes on their home.

We therefore return to the Trustee's burden of proving that it is more likely than not that Ms. Hodel did not receive reasonably equivalent value for that payment. No evidence suggests that Ms. Hodel's payment on the home represented anything but a normal transfer to a third party in payment of a household expense that benefited not only Mr. McCaw but also Ms. Hodel and her children. No evidence suggests that the value of using and keeping her home was less than $1,717.13. And indeed, the law presumes that reasonably equivalent value is received for payment of a household expense like real estate taxes. See above, at 8–9; see also *Schilling v. Montalvo*, 333 B.R. 145, 150 (Bankr. W.D. Ky. 2005). The Trustee has therefore failed to carry his burden of proof that the money paid to redeem the taxes on 309 Margaret Drive—*i.e.*, $1,717.13—was a fraudulent conveyance, because he has failed to prove that Ms. Hodel received less than equivalent value for that portion of the transfer.

One last thing to note. The Court has not considered any of the parties' pre-trial submissions in reaching these results. When a case goes to trial, a court can consider only the evidence that was actually admitted at trial and evidence that satisfies the criteria for judicial notice. E.g., *In re Nixon*, 453 B.R. 311, 316 (Bankr. S.D. Ohio 2011). The Court recalls some frustration among Ms. Hodel and Mr. McCaw in having to go to trial when they had, to paraphrase, "already explained everything." But the purpose of a trial is to gather all the evidence into one proceeding where it is subject to the rules of evidence and procedure. The Court cannot consider matters outside the trial record,

11

including (for example) the breakdown of 2022 Expenses that Mr. McCaw provided in his pre-trial statement. Only trial evidence can supply the basis for a court's judgment.

## D

The Trustee conceded at trial that he had not proven a preference as alleged in Count II, in light of the testimony that Mr. McCaw was not a creditor. The Court agrees.

## IV

Ms. Hodel's payment was to Tazewell County, not Mr. McCaw. But bankruptcy law permits the Trustee to recover the value of a fraudulent conveyance from either the initial transferee (Tazewell County) or the entity for whose benefit such transfer was made (Mr. McCaw). 11 U.S.C. §550(a)(1). A judgment will therefore be entered in accordance with Bankruptcy Rule 7058 in favor of the Trustee and against Mr. McCaw on Count I in the amount of $7,509.25, representing the $9,226.38 payment minus $1,717.13 that was applied to redeem taxes on Ms. Hodel and Mr. McCaw's home. Judgment will be entered in favor of Mr. McCaw on Count II.